**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

GREGORY FISSETTE,
    *Plaintiff*,

v.

JAMES DZURENDA, JOSEPH HAGGAN,
JILL COLAVOLPE, MARK SARSFIELD,
AND GEORGE BYRD,
    *Defendants.*

No. 3:20-cv-157 (VAB)

**INITIAL REVIEW ORDER**

On February 3, 2020, Gregory Fissette ("Plaintiff"), *pro se* and currently incarcerated at the Kettle Morraine Correctional Institution in Plymouth, Wisconsin, filed a Complaint under 42 U.S.C. § 1983 against James Dzurenda, a former Commissioner of the Connecticut Department of Correction ("DOC"),[1] Joseph Haggan, Director of the Probation and Parole Division,[2] Jill Colavolpe, Manager at the Probation and Parole Division, Mark Sarsfield, Manager at the Probation and Parole Division, and George Byrd, Fugitive Coordinator at the Probation and Parole Division (collectively, with Parole Agent and Manager Dan Bennett, "Defendants").[3] Compl., ECF No. 1 (Feb 3, 2020).

In his description of the parties, Mr. Fissette also includes Dan Bennett, Parole Agent and Manager. *Id.* at 3 ¶ 6. Although Mr. Fissette has not included Mr. Bennett's name in the caption,

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). Mr. Dzurenda was Commissioner of the DOC from 2013 to 2014. Conn. Support Servs. Div., https://www.jud.ct.gov/CSSD/ (last visited Mar. 3, 2021).

[2] In Connecticut, the Court Support Services Division oversees pretrial services and probation supervision of adults and juveniles. *See* Conn. Support Servs. Div., https://www.jud.ct.gov/CSSD/ (last visited Mar. 3, 2021).

[3] Mr. Fissette's motion to proceed *in forma pauperis* was granted on February 12, 2020. Order, ECF No. 9 (Feb. 12, 2020).

1

the Court construes Mr. Fissette's Complaint as also asserting this action against Mr. Bennett.[4]

In his civil rights action, Mr. Fissette claims violation of his rights under the United States Constitution based on a fugitive warrant in the National Crime Information Center ("NCIC")[5] database in connection with his 1998 flight from a halfway house in Connecticut. Statement ¶ 24. Mr. Fissette seeks damages and a certificate of completion from Probation Director Haggard. Compl. at 6.

The Court will review Mr. Fissette's claims under 28 U.S.C. § 1915A.

For the following reasons, Mr. Fissette's Complaint is **DISMISSED** for failure to state a plausible claim under 28 U.S.C. § 1915A(b)(1).

**I.     FACTUAL BACKGROUND[6]**

Mr. Fissette's allegations are not entirely clear, but are recounted here based on the most generous reading of the Complaint. *See Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (Complaints filed by *pro se* plaintiffs, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted))).

Convicted on May 5, 1995 for burglary, Mr. Fissette allegedly received a sentence of four years to be served in the custody of DOC. Statement ¶ 1. In January 1998, he allegedly received

---

[4] "[C]ourts have found *pro se* complaints to sufficiently plead claims against defendants not named in the caption when there are adequate factual allegations to establish that the plaintiff intended them as defendants." *Imperato v. Otsego Cty. Sheriff's Dep't*, No. 3:13-cv-1594 (BKS/DEP), 2016 WL 1466545, at *26 (N.D.N.Y. Apr. 14, 2016) (emphasis added) (collecting cases).

[5] The Federal Bureau of Investigation established the NCIC to "enable law enforcement officers in other jurisdictions to apprehend fleeing suspects." *Cook v. Holzberger*, 788 F. Supp. 347, 351 (S.D. Ohio 1992).

[6] All factual allegations are drawn from the Complaint, Mr. Fissette's attached affidavit, ECF No. 1-4 (Feb. 3, 2020) ("Aff."), and the Statement of Complaint, ECF No. 11 (Feb. 24, 2020) ("Statement").

a designation to a halfway house in Hartford, Connecticut, which he allegedly left for fear of his life from the other house members. *Id.* ¶¶ 1-2; Aff. ¶ 3.

After Mr. Fissette fled to Wisconsin, *see* Statement ¶ 2, he allegedly was subsequently arrested on charges of forgery and issuing worthless checks, *Id.* The local police in Wisconsin allegedly contacted the Fugitive Unit at the Connecticut DOC and informed them of Mr. Fissette's location.[7] *Id.* ¶ 3.

At his sentencing, the Assistant District Attorney in Wisconsin allegedly informed Mr. Fissette that active warrants for him from Connecticut in connection with his escape would not be acted upon unless he was in Connecticut. *Id.* ¶¶ 3, 8.

He allegedly was released in 2005, and after another period of incarceration, he allegedly was released in 2007 from the Wisconsin prison system without any detainers or warrants. *Id.* ¶ 4.

In 2013, Mr. Fissette allegedly was again incarcerated in the Wisconsin prison system and was being housed at the Chippewa Valley Correctional Treatment Facility ("Chippewa") until he was suddenly taken out of a "Group Session," placed in an intake holding cell cage, strip searched, shackled, and taken to Stanley Correctional Institution ("Stanley"), a "medium/maximum" custody facility. *Id.* ¶ 5. He allegedly was placed in a strip search room where the officer allegedly slammed Mr. Fissette's head into the door and then placed him in a segregation cell where he remained for thirty days until he was returned to the general population. *Id.*

Mr. Fissette's removal from Chippewa was allegedly prompted by a letter to Chippewa from Fugitive Coordinator George Byrd. *Id.* In 2013, the defendants allegedly had taken

---

[7] Mr. Fissette alleges that the DOC has been aware of his location in Wisconsin since 1999. Statement ¶ 3.

information about Mr. Fissette's fugitive warrant that had previously been in the in-state only database and entered it into the NCIC database, although they had allegedly known about his location since 1999. *See id.* ¶ 21; Aff. ¶¶ 8, 10. The detainer imposed by Connecticut allegedly resulted in Mr. Fissette not being released thirteen months early through an "Earned Release Treatment Program." Aff. ¶ 8. Mr. Fissette allegedly was subsequently released from Stanley because the Assistant District Attorney allegedly dismissed his extradition on the basis of Connecticut's decision not to pursue a warrant. *Id.* ¶ 10.

In 2017, Mr. Fissette allegedly was arrested after a police officer stopped him while he was walking down a road to get gas and ran his name through the NCIC. *Id.* ¶ 11. He allegedly was later released, but rearrested on the basis of the fugitive warrant from Connecticut in the NCIC database. *Id.* ¶¶ 16-17. Mr. Fissette allegedly again was released, but the Connecticut Fugitive Unit has allegedly still not removed his fugitive warrant from the NCIC database. *Id.* ¶ 17.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint . . . [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents

and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d

Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III. DISCUSSION

The Court construes Mr. Fissette's Complaint as asserting a violation of his Fourteenth Amendment due process rights based on the defendants' alleged 2013 entry of his fugitive warrant into the NCIC database and alleged failure to remove it in subsequent years. Because Mr. Fissette's claims concern the reasonableness of retaining the fugitive warrant in the NCIC database, the Court also considers whether Mr. Fissette's allegations implicate his rights under the Fourth Amendment. *See Weyant v. Okst*, 101 F.3d 845, 852 (1996) (noting Fourth Amendment right of an individual to be free from unreasonable seizures).

Upon review, however, the Court concludes that Mr. Fissette has not alleged plausible constitutional violations against Defendants. Moreover, the Court finds that Defendants are entitled to the shield of qualified immunity.

### A. Alleged Fourth Amendment Claims

Mr. Fissette alleges that the Defendants are responsible for his repeated arrests based on information entered into the NCIC database and the allegedly wrongful failure to remove it. Statement ¶ 7.

In support of his claims, Mr. Fissette cites to *Maney v. Ratcliff,* 399 F. Supp. 760 (E.D. Wis. 1975), a case that was asserted against the Chief of Police of and a police officer from the Police Department of Baton Rouge, and a District Attorney and Assistant District Attorney of the East Baton Parish Louisiana. Due to information available on the NCIC database, Mr. Maney was arrested three times and held for extradition on a Louisiana narcotics charge without ever being extradited or prosecuted. *Id.* at 764-66; *see* Statement ¶ 25. The District Court of the

6

Eastern District of Wisconsin held that the "[r]epeated arrests without subsequent prosecution" of Mr. Maney violated his Fourth Amendment right to be free from arbitrary or capricious acts by defendants and unreasonable interference by police. *Id.* at 773.

No court within the Second Circuit, however, has followed *Maney*, a decision not binding on this Court. Moreover, *Maney* is distinguishable because it was asserted against defendants who were responsible for the decision of whether to extradite the plaintiff, whereas Mr. Fissette lodges his claims against the officers employed by Connecticut's Probation Division (known as the Court Support and Services Division) and the former DOC Commissioner, who were responsible for his custody during the term of his sentence.

More recently, the Sixth Circuit concluded that it was reasonable for a police department to keep an arrest warrant on NCIC database even if the state was not willing to proceed with extradition. *See United States v. Jones*, 260 F. App'x. 769, 772 (6th Cir. 2008). In *Jones*, the Sixth Circuit reasoned that a state

> could act reasonably in foregoing the expense in extraditing a fugitive from a distant state but readily extradite that same fugitive if arrested in a nearby state . . . . In addition, economic conditions are subject to change. While a jurisdiction might not have the funds to extradite on one occasion, on a later occasion it might have sufficient funds to extradite.

*Id.* Likewise, the State of Connecticut may later decide to extradite Mr. Fissette in accordance with circumstances such as his proximity to Connecticut or funding availability. Because retaining the fugitive warrant on the NCIC is not an unreasonable or arbitrary act by the defendants, Mr. Fissette's allegations do not establish a plausible Fourth Amendment violation.

### B. Alleged Due Process Claims

With respect to his claim of a due process violation based on deprivation of a liberty interest, Mr. Fissette has also failed to state a claim.

7

The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property. *See* U.S. Const. Amend. XIV. The Court must analyze a claim of violation of procedural due process by (1) asking whether there exists a liberty or property interest of which a person has been deprived, and (2) if so, whether the procedures followed by the State were constitutionally sufficient. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (noting court must consider whether the procedures followed by the State were constitutionally sufficient after plaintiff establishes protected property or liberty interest).

"States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 483, 483-84 (1995). In the prison context, a prisoner must show that he was subject to an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Mr. Fissette is currently serving a sentence for a conviction with a maximum discharge date of February 1, 2023[8] in Wisconsin that is not alleged to stem from the fugitive warrant in the NCIC. As a result, Mr. Fissette cannot establish that he has a liberty interest deprivation caused by the fugitive warrant in the NCIC because he is now in custody of the Wisconsin Department of Correction serving a sentence on a conviction in Wisconsin. *See Walker v. Sankhi*, 494 F. App'x 140, 143 (2d Cir. 2012) ("Walker could not have suffered a deprivation of liberty as a result of the Bellamy burglary charge because, throughout the pendency of that charge, he was already in custody, and remained in custody, for a completely separate burglary charge, of which he was ultimately convicted.")

Moreover, Mr. Fissette has not established a plausible liberty deprivation based on his alleged incarceration being prolonged by thirteen months due to his inability to graduate from the

---

[8] *See* Wis. Dep't of Corrections Offender Locator, https://appsdoc.wi.gov/lop/detail.do (last visited Mar. 3, 2021).

Earned Release Program in 2013.[9] Generally, an inmate has no constitutional right to an early release or rehabilitative programming. *See Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979) (no constitutional right to be released on parole or to other conditional release from prison, prior to expiration of valid sentence); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (prisoners have no constitutional due process right to rehabilitative programming); *Victory v. Pataki*, 814 F.3d 47, 59-60 (2d Cir. 2016) (possibility of release for prisoner who has not been granted parole is "mere hope" and not sufficient to warrant constitutional protection). The state may create a liberty interest entitled to due process protection, *see Sandin*, 515 U.S. at 483-84, and a prisoner such as Mr. Fissette may gain a liberty interest once he has completed an early release program, *see Ivy v. Heise*, No. 16-cv-825 (JDP), 2017 WL 1380640, at *2 (W.D. Wis. Apr. 17, 2017) (citing *Zimmerman v. Tribble*, 226 F.3d 568, 571-72 (7th Cir. 2000)). Mr. Fissette, however, has not alleged that he completed an early release program and he has no liberty interest in the participation in such a program. *See Zimmerman*, 226 F.3d at 572.

Even assuming that his prolonged incarceration could be considered a liberty deprivation, any such claim is barred by the relevant three-year statute of limitations.[10] The District Court of Connecticut applies the three-year statute of limitation set forth in Connecticut General Statutes § 52-577. *Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994); *see* Conn. Gen. Stat. § 52-577. Since the filing of this Complaint on February 3, 2020, the statute of limitations bars claims that

---

[9] The Court notes that Mr. Fissette has not clearly alleged how the fugitive warrant in the NCIC prevented him from being eligible for the Earned Release Program.

[10] Although the statute of limitations represents an affirmative defense, a court may dismiss a claim where the allegations of the complaint demonstrate that the relief sought is barred by the statute of limitations. *Walters v. Indus. and Com. Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011); *Reese v. Lightner*, No. 3:18-cv-1922 (KAD), 2019 WL 2176342, at *3 (D. Conn. May 20, 2019) (collecting cases).

9

had accrued by February 3, 2017, unless the continuing violation doctrine applies to extend the limitations period.[11] *See Reese*, 2019 WL 2176342, at *4. The continuing violation doctrine is limited "to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment," and, when the doctrine is applicable, "the limitations period begins to run when the defendant has engaged in enough activity to make out an actionable claim." *Harnage v. Torres*, 665 F. App'x 82, 84 (2d Cir. Dec. 5, 2016) (quoting *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015)) (summary order). As the Second Circuit has explained, the continuing violation applies to claims "composed of a series of separate acts" that together constitute one unconstitutional or unlawful practice, but not to "discrete unlawful acts" even where such acts are part of a "serial violation." *Gonzalez*, 802 F.3d at 220.

Here, the alleged liberty deprivation based on Mr. Fissette's prolonged incarceration occurred before February 3, 2017, and it represents a discrete claim that he could have challenged in 2013. *See id*. at 223-24; *Smith v. Annucci*, No. 6:18-cv-06261 (EAW), 2019 WL 539935, at *5 (W.D.N.Y. Feb. 11, 2019) (finding continuing violation inapplicable to allegations that a series of reviews of plaintiff's continued confinement violated his right to procedural due process); *McFadden v. Kralik*, No. 04-cv-8135 (RCC/JCF), 2007 WL 924464, at *7 (S.D.N.Y. Mar. 28, 2007) (finding the continuing violation doctrine inapplicable to plaintiff's claim regarding a "series of decisions over five years by DOCS to keep him in administrative segregation").

---

[11] Federal law controls when a cause of action accrues. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "Under federal law, a cause of action generally accrues 'when the plaintiff knows or has a reason to know of the harm or injury that is the basis of the action.'" *M.D. Southington Bd. Educ.*, 334 F.3d 217, 221 (2d Cir. 2003) (quoting *Leon v. Murphy*, 988 F.2d 303, 309 (2d Cir. 1993)).

### C. Qualified Immunity

Even assuming Mr. Fissette has alleged a plausible constitutional violation based on retention of the fugitive warrant in the NCIC database, Defendants are entitled to qualified immunity from damages.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Consequently, a defendant is entitled to qualified immunity if "(1) his conduct does not violate a clearly established constitutional right, or (2) it was 'objectively reasonable' for the officer to believe his conduct did not violate a clearly established constitutional right." *Hartline v. Gallo*, 546 F.3d 95, 102 (2d Cir. 2008).

"A right is clearly established when the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Connell v. Signoracci*, 153 F.3d 74, 80 (2d Cir. 1998) (alteration and internal quotation marks omitted). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004). The Court need not rely on a "case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

As previously discussed, it is not clearly established that retaining a fugitive warrant on the NCIC even after making a decision not to extradite the individual violated Mr. Fissette's constitutional rights. This Court has found no binding authority within the Second Circuit

11

establishing such a violation, and the Sixth Circuit has indicated that it is reasonable not to remove a warrant from the NCIC, even if the state has no intent to extradite the individual. *See Jones*, 260 F. App'x at 772. As a result, the Defendants are entitled to qualified immunity because they did not violate clearly established law. Alternatively, it was objectively reasonable for the defendants—the former Commissioner of DOC and officers of the Connecticut Court Support Services Division—to believe that their conduct did not violate a clearly established constitutional right.

Accordingly, the Court will dismiss Mr. Fissette's alleged constitutional claims as not plausible under 28 U.S.C. 1915A(b)(1).

## IV. CONCLUSION

For the foregoing reasons, Mr. Fissette's Complaint is **DISMISSED** for failure to state a plausible claim under 28 U.S.C. § 1915A(b)(1).

Because the Court finds that Mr. Fissette cannot establish a plausible constitutional violation on the basis of the entry and retention of his fugitive warrant in the NCIC database against the defendants, the Court will dismiss the Complaint with prejudice.

**SO ORDERED** at Bridgeport, Connecticut, this 12th day of March, 2021.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE